The Case.
The Deft. Married Mackarty’s Daughter & became Indebted to him 200A". by Bond, He lived at the time of giving the Bond, in Westmorland, but afterwards removed into Stafford, McCarty by his Will gives all his Debts in Stafford to his Son Dennis and the residue of his Estate to the Complt. and two other Sons and makes the Deft, one of his Ex’ors
The End of the Bill against the Deft, is to have a proportionable part of the Debt as residuary Legatee
The Deft, in his Answer has sworn, That he rec’ed 200;£. or the value of it in Negroes with his Wife and borrowed this 29l£. for which he gave Bond which rested several Years without demand— Upon some Discourse between him and McCarty he told him he wou’d take care that shou’d never rise against him, or Trouble him and Rather than it shou’d he wou’d destroy it immediately, But the Bond was not Cancelled At other times he had Discourses with his Wife and others about this Bond, and tells them that Fitzhugh shall never be Troubled for that money. But say’d. I don’t deliver up the Bond yet, it will keep him in Awe &c.
And before the Marriage he told Fitzhugh he loved this Daughter as well as any other of his Daughters and he wou’d give her as much as any of them, and never was Displeased with her, Now in his Will he has given his other Daughters 500;£. besides other Legacies and to his Daughter Fitzhugh he gives 2 Negroes of 40£ value Sterling All which will not make up five hundred pounds which the Tes’tor. was Obliged to give and the Question is, Whether upon the Equty of this [220] Case the Pit. ought to be relieved
This Debt is at Law Extinguished by making the Deft, an Ex’or. because it suspended the Action And a Person’s Action once Suspended is gone for ever, This appears in a great many Cases, Alston and Andrews, Hutt. 528. Dorchester and Webb. Cro. Car. 372. S’r W’m Jones 345. Salk. 303. Wankford & Wankford
The Tes’tor. was a Lawyer and without doubt knew it wou’d be so and that must be the Occasion of not Cancelling the Bond and the Reason why the Defts. Wife had no more given to her by the Will
*R113 But then it will be said, that notwithstanding the Law is so> the Debt still subsists in Equity and shall be recovered by the residuary Legatees upon the Authority of the Case of Philips & Philips 1. Cha. Cases 292. Nicholas Philips made his Will and the Deft, his Ex’or. who was Debtor to him 4Q0£. gave particular Legacies and the residue to the Pit. And the Question was Whether the Debt, being discharged in Law shou’d be accounted as part of the residue, there being no need of it to pay the Debts or Legacies particularly given. A difference was pressed between a Legatee & a Debtor, in which the Debt, tho’ discharged shou’d be Assets and the Case of an Ex’or. who is in Effect Devisee of the Debt, but the Lord Chancellor disallowed the difference and Decreed the Debt to the Pit. but was say’d to be contrary to former Precedents
I admit the Equity of this Decree, and there are other Instances where a Bond is extinguished at Law, and shall subsist in Equity particularly in the Case of Acton and Pierce 2 Vern. 480.
And the Reason is from an Implication of the Tes’tors Intent that the Debt shou’d be accounted a part of the residuebythe Rules of Equity because of the Express Legacy vid. Salk. 303.
Tho it may be objected that we can’t be let into this Evidence as it tends to Explain a Will and to change that Construction which by the Rules’of Equity might be made upon the face of it
But it is a settled point that proof may be admitted to Shew the Testor’s Intent in some Cases when, it is only to oust an Implication or Rule of Equity.
[221] As in the Case of Lady Granville and the Dutchess of Branford, 2. Vern. 648. and Batchelor and Seale 2. Vern. 736. So Collateral Proof is Admitted to make certain a Person or Thing, between Hodgson and Caldicot and Hodgson and Fitzh. 2. Vern. 593.
So when a Testor was Indebted to a Person and gave him a Legacy, parol proof was admitted as to his intention, whether the Legacy shou’d go in Satisfaction of the Debt So here 2. Vern. 594.
[End, as I conjecture, of Sir John Randolph’s Reports, which begin p. 114 ante.] [Note by W. G.]
*R114 I, W. W. Scott, Law Librarian of the State of Virginia, do hereby certify that I have carefully compared the foregoing pages with what is believed to be the original! Manuscript Reports by Sir John Randolph, said Manuscript being the property of the Virginia Historical Society, and that the said pages except as otherwise indicated in a few instances where the Original Manuscript was mutilated or illegible are a true copy of the same.
Given under my hand this 12th day of April, 1909.

W. W. Scott.

As to which see Ante, p.*14 et seq. R T. B.